### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | |
|---|---|
| Blue Spike, LLC, | |
| *Plaintiff,* | No. 6:17-CV-00063-RWS-KNM |
| v. | |
| LeMall Corp. & LeEco Group, | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

## LEMALL'S AND LESHI'S MOTION TO DISMISS OR TRANSFER

Defendant LeMall Corp. ("LeMall") and nonparty Leshi Internet Information and Technology Corp. ("Leshi"), move the Court pursuant to Rules 4(m), 12(b)(2), 12(b)(3), and 12(b)(6) to dismiss the complaint of Plaintiff Blue Spike, LLC ("Plaintiff" or "Blue Spike") or, in the alternative, pursuant to 28 U.S.C. § 1404(a), to transfer this case to the Northern District of California.

# Table of Contents

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF THE ISSUES........................................................................................ 2

III. GENERAL LEGAL PRINCIPLES .................................................................................... 3

IV. BACKGROUND ON LESHI AND LEMALL ..................................................................... 4

V. UNLESS BLUE SPIKE ELECTS TO REPLACE "LEECO GROUP" WITH LESHI, THE
CASE SHOULD BE DISMISSED AS TO "LEECO GROUP" ............................................. 5

    A. The Confusion As To The Intended Defendant ............................................... 5

    B. The Case Should Be Dismissed Under Rule 4(m) As To "LeEco Group" If Blue Spike
Does Not Replace "LeEco Group" With Leshi ................................................ 7

VI. THE COURT SHOULD DISMISS THIS CASE FOR IMPROPER VENUE AND LACK
OF PERSONAL JURISDICTION, OR TRANSFER THIS ACTION TO THE
NORTHERN DISTRICT OF CALIFORNIA ...................................................................... 8

    A. The Court Should Dismiss LeMall For Improper Venue ................................. 8

        1. Legal principles........................................................................................ 8

        2. Blue Spike's complaint fails to allege that venue is proper under Section 1400(b)'s
requirements................................................................................... 9

        3. Venue is improper because LeMall does not reside in this district or have a regular
and established place of business here.................................................... 10

    B. The Court Should Dismiss Leshi For Lack Of Personal Jurisdiction.......................... 11

        1. Legal principles........................................................................................ 11

        2. This Court lacks general personal jurisdiction over Leshi...................... 13

        3. This Court lacks specific personal jurisdiction over Leshi ..................... 14

    C. The Court Should Transfer This Case To The Northern District of California............. 15

        1. Legal principles........................................................................................ 15

        2. The Northern District of California is a more appropriate forum........................... 16

VII. THE COURT SHOULD DISMISS CLAIMS FOR FAILURE TO STATE A CLAIM ...... 19

    A. Legal Principles ........................................................................................... 19

    B. All Of Plaintiff's Claims For Indirect And Willful Infringement Should Be Dismissed
Because Plaintiff Inadequately Pled Knowledge Of The Patents................................. 20

        1. Post-suit conduct cannot form the basis of indirect and willful infringement claims
in an original complaint ........................................................................... 20

        2. Blue Spike's pre-suit allegations based solely upon information and belief should be
disregarded because they lack factual support........................................ 21

            a) The '569 Patent ............................................................................. 21

   b) The '719 Patent ............................................................................. 22

   c) The Remaining Patents of Counts 3-7............................................. 23

 C. Count I Should Be Dismissed For Failure To State A Claim For Direct, Indirect And Willful Infringement ...................................................................... 24

  1. The Complaint fails to state a claim for direct infringement of U.S. Patent No. 5,745,569 by Defendants ....................................................................... 24

  2. The Complaint fails to state a claim for indirect or willful infringement of expired U.S. Patent No. 5,745,569 ..................................................................... 26

 D. Counts 3-7 Fail To State A Claim For Contributory Infringement .............................. 27

 E. Counts 3-7 Fail To State A Claim For Induced Infringement ...................................... 28

VIII. CONCLUSION ....................................................................................................... 30

## Table of Authorities

**Cases**

*Acceleron, LLC v. Egenera, Inc.*,
  634 F. Supp. 2d 758, 769 (E.D. Tex. 2009) ............................................................ 11

*Adaptix, Inc. v. HTC Corp.*,
  937 F. Supp. 2d 867 (E.D. Tex. 2013) .................................................................. 18

*Akamai Techs., Inc., v. Limelight Networks, Inc.*,
  797 F.3d 1020 (Fed. Cir. 2015) ........................................................................... 24

*Ambraco, Inc. v. Bossclip B.V.*,
  570 F.3d 233 (5th Cir. 2009) ................................................................................. 3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................... passim

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................... passim

*Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*,
  406 U.S. 706 (1972) .............................................................................................. 16

*Bush Seismic Tech, LLC v. American Gem Society*,
  No. 2:15-cv-1809-JRG, Dkt. No. 44 (E.D. Tex. April 13, 2016) ...................... 20, 21

*Commil USA, LLC v. Cisco Sys., Inc.*,
  135 S. Ct. 1920 (2015) ................................................................................ 22, 26, 27

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
  No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427 (E.D. Tex. Aug. 14, 2015) ......... 29

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014) ........................................................................................... 13

*DSU Med. Corp. v. JMS Co.*,
  471 F.3d 1293 (Fed. Cir. 2006) ........................................................................... 29

*Fourco Glass Co. v. Transmirra Prod. Corp.*,
  353 U.S. 222 (1957) ........................................................................................ 9, 10

*Frito–Lay N. Am., Inc. v. Medallion Foods, Inc.*,
  867 F. Supp. 2d 859 (E.D. Tex. 2012) .................................................................. 18

*Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*,
  536 F.3d 439 (5th Cir. 2008) ................................................................................. 3

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ........................................................................................ 13, 14

*Grober v. Mako Prod., Inc.*,
  686 F.3d 1335 (Fed. Cir. 2012) ....................................................................... 11, 12

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947) .............................................................................................. 16

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    136 S. Ct. 1923 (2016) ......................................................................... 27

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012) ........................................................... 28

*In re Cordis Corp.*,
    769 F.2d 733, 737 (Fed. Cir. 1985) ....................................................... 9

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008) ........................................................... 16

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ..................................................... 3, 15, 16

*Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*,
    818 F.3d 193, 212 (5th Cir. 2016) ....................................................... 11

*Kipp v. Ski Enter. Corp. of Wisconsin*,
    783 F.3d 695 (7th Cir. 2015) ............................................................... 13

*Legendary Lightning Grp., Inc. v. Optigenex, Inc.*,
    4:15-CV-53-LG-CMC, 2015 WL 3942946 (E.D. Tex. June 26, 2015) ................ 21

*LSI Indus. Inc. v. Hubbell Lighting, Inc.*,
    232 F.3d 1369 (Fed. Cir. 2000) ........................................................... 11

*Lyda v. CBS Corp.*,
    838 F.3d 1331, 1340 (Fed. Cir. 2016) ....................................... 24, 25, 26

*Monkton Ins. Servs., Ltd. v. Ritter*,
    768 F.3d 429 (5th Cir. 2014) ......................................................... 12, 13

*Radio Sys. Corp. v. Accession, Inc.*,
    638 F.3d 785 (Fed. Cir. 2011) ............................................................. 14

*Silent Drive, Inc. v. Strong Indus., Inc.*,
    326 F.3d 1194 (Fed. Cir. 2003) ........................................................... 11

*Straight Path IP Grp., Inc. v. Apple Inc.*,
    No. C 16-03582 WHA, 2016 WL 8729942 (N.D. Cal. Oct. 21, 2016) ................ 23

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
    No. 16-341, 2017 WL 2216934 (U.S. May 22, 2017) ......................... 8, 9, 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308, 322 (2007) ....................................................................... 3

*U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*,
    No. 6:12-CV-366-MHS-JDL, 2013 WL 8482270 (E.D. Tex. March 6, 2013) ........ 30

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
    917 F.2d 1574 (Fed. Cir. 1990) ............................................................. 8

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ......................................................................... 12

iv

*Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346 (Fed. Cir. 2017) ....................... 3

**Statutes**

28 U.S.C. § 1391 ..................................................................................................................... 9

28 U.S.C. § 1400 ................................................................................................................. 2, 9

28 U.S.C. § 1404 ................................................................................................. 3, 15, 16, 18

35 U.S.C. § 271 ..................................................................................................................... 29

Fed. R. Civ. P. 12 ..................................................................................................... 1, 2, 3, 19

Fed. R. Civ. P. 4 ........................................................................................................... 1, 6, 7

Fed. R. Civ. P. 8 ................................................................................................................. 19, 20

## I.   INTRODUCTION

Blue Spike's lawsuit is flawed for multiple reasons, so this Court should dismiss it or, at minimum, transfer it to another district. As an initial matter, Blue Spike has named a non-existent entity, "LeEco Group," as a defendant. For the reasons explained in Section V below, non-party Leshi—presumably Blue Spike's intended Chinese target—makes a special appearance to request dismissal against "LeEco Group" under Rule 4(m) unless Blue Spike corrects its Complaint to name a real entity.

Assuming Blue Spike intended to sue Leshi when it referenced "LeEco Group," this Court lacks personal jurisdiction over Leshi. It is a Chinese company based in Beijing. It has no employees, property, mailing address, telephone number, or bank accounts here. It does not sell the Accused Products (*see* Complaint ¶ 17) in the United States. Nor does it advertise, offer for sale, or import those products in this country. It and its activities have no connection to the United States—including Texas—so this Court should dismiss the lawsuit against Leshi for lack of personal jurisdiction under Rule 12(b)(2) (assuming Blue Spike actually names Leshi a defendant prior to the resolution of this motion).

United States activity related to the Accused Products is governed not by Leshi, but by U.S. corporations, including defendant LeMall. This district is an improper venue for LeMall. It is a Delaware corporation with all its regular and established places of business located in California. It has no offices, employees, mailbox, telephone number, or bank in Texas. It does not file income taxes in Texas and is not registered with the Texas Secretary of State. LeMall does not make or use any products or services in Texas. In short, LeMall has no connection whatsoever with the Eastern District of Texas, so this Court should dismiss the lawsuit against LeMall for improper venue under Rule 12(b)(3).

To the extent the Court declines to dismiss this case, the Court should transfer it to the Northern District of California. The accused conduct stems from employees, offices, and third parties located in the San Francisco Bay Area. As a result, the relevant documents and witnesses are primarily there. Not only will this enhance convenience, the Northern District of California–unlike this district—offers compulsory process to secure the attendance of these witnesses.

Finally, even if the Court elects to keep this case in this district, it must be dismissed for failure to state a claim. Blue Spike's Complaint for patent infringement is replete with formulaic recitations of the elements of contributory, induced, and willful infringement without facts showing that Blue Spike is entitled to relief. For example, Blue Spike ignores the significance of a patent being expired more than a year prior to this action and attempts to implicate Defendants based on circumstances having no connection to Defendants whatsoever. This Court should therefore dismiss the case under Rule 12(b)(6).

## II.  STATEMENT OF THE ISSUES

If Blue Spike does not remove "LeEco Group" as a defendant, whether the Complaint should be dismissed as to "LeEco Group" under Rule 4(m) for failure to serve.

If Blue Spike adds Leshi to the case, whether the case should be dismissed as to Leshi under Rule 12(b)(2) for lack of personal jurisdiction.

Whether the case should be dismissed as to LeMall under Rule 12(b)(3) and 28 U.S.C. § 1400(b) for improper venue.

Whether the claim for direct infringement under Count I of the Complaint should be dismissed as to all defendants under Rule 12(b)(6) for failure to state a claim because Plaintiff failed to adequately plead facts establishing a reasonable inference that the defendants performed all steps of any method claim.

Whether all claims of indirect and willful infringement should be dismissed as to all defendants under Rule 12(b)(6) for failure to state a claim because Plaintiff failed to adequately plead the requisite knowledge and intent.

If the Court declines to dismiss the case as to any party, whether the Court should transfer the case to the Northern District of California under 28 U.S.C. § 1404 for the convenience of parties and witnesses and in the interest of justice.

## III. GENERAL LEGAL PRINCIPLES

In lieu of answering a complaint, a party may move the court to dismiss the case for lack of personal jurisdiction under Rule 12(b)(2), improper venue under Rule 12(b)(3), or failure to state a claim under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b). Under Rule 12(b)(2) and Rule 12(b)(3), the court "is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009) (citing *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008)); *accord Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1352 (Fed. Cir. 2017). Given the posture of such motions, the court must view the facts in a light most favorable to the plaintiff. " *Ambraco,* 570 F.3d at 237–38; *Xilinx,* 848 F.3d at 1352. Under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

A party may also move the court to transfer the case to a district where it "might have been brought." 28 U.S.C. § 1404 (a). The underlying premise of § 1404(a) is that courts should prevent plaintiffs from subjecting defendants to venues that are inconvenient. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008). The moving party must show "good cause," and this burden "reflects the appropriate deference to which the plaintiff's choice of venue is entitled." *Id*. at 315.

## IV.  BACKGROUND ON LESHI AND LEMALL

Although Blue Spike references "LeEco" in its Complaint, LeEco is not a company, but a brand associated with numerous independent companies, each with different lines of business and different geographic footprints. (Wei Decl. ¶ 5; Deng Decl. ¶ 3.)[1] In China, one such company is Leshi Internet Information and Technology Corp., a company organized under Chinese law with its headquarters in Chaoyang District, Beijing ("Leshi"). (Wei Decl. ¶¶ 3, 5.) Leshi is one of the largest online video companies in China. (*Id*. ¶ 4.) Leshi has an equity stake in other LeEco-associated Chinese companies that are involved in the development of televisions and smart phones. (*Id*. ¶ 6.) Neither Leshi nor the entities producing TVs and phones have any presence in the United States. (*Id*. ¶¶ 7–19.)

In the United States, other companies are associated with the LeEco brand. Le Technology Inc. is a company organized under the laws of California with its principal place of business in San Jose, California ("LeTech"). (Deng Decl. ¶¶ 4, 14.) LeTech is in the business of distributing and selling smart devices (e.g., smart phones) in the United States. (*Id*. ¶ 8.) It is not a defendant in this lawsuit. (*See* Dkt. No. 1 ¶¶ 2–3 ("Complaint").) LeTech owns LeMall, the Delaware corporation named as a defendant. (Deng Decl. ¶ 2; Complaint ¶ 3.) LeTech and LeMall are not owned (directly or indirectly) by Leshi or any other Chinese entity. (Deng Decl. ¶¶ 2, 6–7.)

LeMall has several offices and a warehouse in California, but none in Texas. (*Id*. ¶¶ 13, 16.) LeMall is in the business of selling smart devices through an online platform in the United States, currently www.leeco.com/us/ (previously www.lemall.com/us/). (*Id*. ¶ 9.) LeMall has no

---

[1] "Wei Decl.," "Deng Decl.," and "Stahl Decl." refer to the Declaration of Zhang Wei, the Declaration of Chaoying Deng, and the Declaration of Christian G. Stahl, respectively, filed concurrently with this brief. Exhibit numbers refer to the exhibits attached to the Stahl declaration.

employees of its own, but LeTech employees in San Jose and Los Angeles, California, work on the websites. (*Id.* ¶ 11.) LeTech bills LeMall for this work. (*Id.*)

## V. UNLESS BLUE SPIKE ELECTS TO REPLACE "LEECO GROUP" WITH LESHI, THE CASE SHOULD BE DISMISSED AS TO "LEECO GROUP"

### A. The Confusion As To The Intended Defendant

There is currently a good bit of confusion over the intended Chinese defendant in this action. Named defendant "LeEco Group" is not a real entity. (Wei Decl. ¶ 5.) Blue Spike described "LeEco Group" this way in its Complaint:

> LeEco Group ("LeEco") is a conglomerate of companies organized and existing under the laws of China, with a principal place of business at Letv Building, No. 105, Yaojiyuan Road Chaoyang District, Beijing 100026.

(Complaint ¶ 4.) Leshi fits that description, as it is associated with the LeEco brand, resides at that address, and is a large, publically traded company with ownership interest in other Chinese LeEco-associated companies. (*See* Wei Decl.¶¶ 2–3, 6.)

Leshi believed it was being sued, and it instructed its lawyers to accept a waiver of service request on its behalf. (Stahl Decl. ¶ 2.) Due to apparent confusion, Leshi did not initially inform its counsel that "LeEco Group" was not Leshi's actual, legal name, and Leshi's lawyers did not initially realize that "LeEco Group" was not Leshi's name. (*Id.* ¶ 3.) At the direction of their client, Leshi's lawyers offered to accept a waiver of service on behalf of "the Leeco foreign defendant." (*Id.* ¶ 4.) The domestic defendant, LeMall, moved the court for an extension such that its response to the Complaint would be due on the anticipated deadline for the foreign defendant, June 12. (Dkt. No. 15.) Thus, there was a disconnect between the party named in the Complaint and the party willing to accept service of a complaint directed at it.

To complicate things further, although Leshi offered to accept a waiver of service request and Leshi's counsel told Blue Spike's counsel to send him the waiver form, Blue Spike never sent the form or otherwise complied with Rule 4(d)(1). (*Id.* ¶ 6; Ex. A.)

The issue came to light as Leshi's attorneys were preparing this motion and it became clear that their client was not actually called "LeEco Group"—no such company exists—and that the official name of the company willing to waive service is "Leshi Internet Information and Technology Corp." (Stahl Decl. ¶ 7.) First thing in the morning (U.S. time) on Thursday June 8, Leshi's lawyer called Blue Spike's lawyers to figure out the best path forward; he left a voicemail and then followed up with an email. (*Id.* ¶ 8.) Blue Spike's counsel replied to the email asking for "the name as written and what you want to change to." (Stahl Decl. ¶ 8; Ex. B.) Leshi's lawyer replied "'LeEco Group' does not exist and I believe the intended party is 'Leshi Internet Information & Technology Corp.'" (Stahl Decl. ¶ 11; Ex. B.) Blue Spike's counsel responded with an email suggesting that he may not have understood the issue ("We may need to just enter into an agreement to address past damages"), but nonetheless offering to discuss on Friday morning. (Stahl Decl. ¶ 11; Ex. B.)

Leshi's lawyers proposed a call at 11:30 am on Friday, but heard nothing back from Blue Spike's lawyers. (Stahl Decl. ¶ 11; Ex. C.) They tried calling him, left a voicemail, and followed up with an email, in their continued attempt to have a conference on the topic. (Stahl Decl. ¶ 11; Ex. C.) Blue Spike's lawyers did not call them back, but he sent an email asking about "a stipulation of substitution that covers liability, if proven" for LeEco products. (Stahl Decl. ¶ 12; Ex. B.) As this yet again did not address the underlying issue that needed to be resolved, Leshi's lawyer reiterated yet again that "this would be much easier to talk through by phone," and asking

for a call. (Stahl Decl. ¶ 13; Ex. B.) Blue Spike's lawyer did not respond to the email or call Leshi's lawyers. (Stahl Decl. ¶ 13.)

So, Leshi finds itself in an unusual position. It thought it was being sued, gave its lawyers permission to accept a waiver of service request in exchange for aligning its response date with LeMall's, and was planning on responding to the complaint on June 12. Yet, it has no actual obligation to do so because Blue Spike did not actually submit the waiver of service request form and Blue Spike named another, non-existent entity in the Complaint. Furthermore, it is not clear whom Blue Spike intended to sue and whether it intends to proceed against Leshi.

### B.  The Case Should Be Dismissed Under Rule 4(m) As To "LeEco Group" If Blue Spike Does Not Replace "LeEco Group" With Leshi

Given this complicated and unfortunate state of affairs—which may have been avoided had Blue Spike conferred with Leshi's lawyers after repeated requests—Leshi believes the best course of action is to make this special appearance and respond to Blue Spike's Complaint.

If Blue Spike does not fix the Complaint—by dropping "LeEco Group" and, if its intent, adding Leshi—before the resolution of this motion, the Court should dismiss the Complaint as to "LeEco Group" pursuant to Rule 4(m). *See* Fed. R. Civ. P. 4(m) (when defendant not served within 90 days, court must dismiss defendant or order service by specified time). The Complaint was filed on January 31 (*see* Dkt. No. 1), more than 90 days ago. Blue Spike has not served "LeEco Group" pursuant to Rule 4(c) (actual service), and Blue Spike has not secured a waiver of service from "LeEco Group" by complying with Rule 4(d). (*See* Dkt.) Thus, more than 90 days has passed, and "LeEco Group" should be dismissed. Since "LeEco Group" does not exist (*see* Wei Decl. ¶ 5), there can be no reason to extend this deadline. Of course, Blue Spike will be free to file a complaint against the actual Chinese entity it intended to sue.

Leshi remains willing to accept a waiver of service. If Blue Spike corrects the Complaint by adding Leshi and serves a Rule 4(d) waiver request before the resolution of this motion, it will moot the need for a Rule 4(m) dismissal.

If Blue Spike elects to proceed against Leshi, the case should nonetheless be dismissed. In the interest of avoiding multiple rounds of briefing and honoring its commitment to respond by June 12, Leshi responds in Sections VI and VII of this brief as if the charges against "LeEco Group" were leveled against Leshi. As explained below, the Court lacks personal jurisdiction over Leshi and, regardless, Blue Spike has failed to state a claim upon which relief can be granted.

## VI.  THE COURT SHOULD DISMISS THIS CASE FOR IMPROPER VENUE AND LACK OF PERSONAL JURISDICTION, OR TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF CALIFORNIA

This Court should dismiss this case because venue is improper for LeMall and there is no personal jurisdiction over Leshi. To the extent the Court finds otherwise, the Court should transfer the case to the Northern District of California, a substantially more appropriate forum.

### A.   The Court Should Dismiss LeMall For Improper Venue

The Supreme Court's recent decision in *TC Heartland* compels dismissal of LeMall from this lawsuit. Prior to *TC Heartland*, courts applied the Federal Circuit's decision in *VE Holding Corp. v. Johnson Gas Appliance Co.*, which held that venue was proper for a corporation in any court with personal jurisdiction. 917 F.2d 1574, 1584 (Fed. Cir. 1990). *TC Heartland* rejected that conclusion. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, No. 16-341, 2017 WL 2216934, at *7-*8 (U.S. May 22, 2017). Thus, the decades-old conflation of venue and personal jurisdiction in patent cases is no more. Neither Blue Spike's allegations nor the actual facts support venue here.

#### 1.   Legal principles

A patent infringement lawsuit "may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and

established place of business." 28 U.S.C. § 1400(b). A domestic corporation "resides" only within its state of incorporation. *TC Heartland*, 2017 WL 2216934, at *7-*8; *Fourco Glass Co. v. Transmirra Prod. Corp.*, 353 U.S. 222, 226 (1957). A defendant has "a regular and established place of business" only where it has "a permanent and continuous presence." *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985).

### 2. Blue Spike's complaint fails to allege that venue is proper under Section 1400(b)'s requirements

Blue Spike claims that venue is proper in this district by making a series of allegations that are not only conclusory, but insufficient to support venue under § 1400(b). This is the relevant paragraph of the Complaint:

> Venue is proper in this judicial district under 28 U.S.C. §§ 1391 (b)-(c) and 1400(b) because Defendant does business in the State of Texas, Defendant has committed acts of infringement in Texas and in the District, a substantial part of the events or omissions giving rise to Blue Spike's claims happened in the District, and Defendant is subject to personal jurisdiction in the District. *See Luci Bags LLC v. Younique, LLC*, No. 4:16-CV-00377, 2017 WL 77943, at *3 (E.D. Tex. Jan. 9, 2017) ("For venue purposes, a defendant entity is deemed to reside in any judicial district where it would be subject to the court's personal jurisdiction with respect to the civil action in question.") (citing 28 U.S.C. § 1391 (c)(2)).

(Complaint ¶ 9.)

Blue Spike fails to allege that LeMall "resides" in this district, which—at minimum—would necessitate an allegation that LeMall is incorporated in Texas, *TC Heartland*, 2017 WL 2216934 at *8. Instead, Blue Spike affirmatively pleads that LeMall is ***not*** a Texas corporation: "On information and belief, Defendant LeMall Corp. ("LeMall") is a corporation organized and existing ***under the laws of Delaware***." (Complaint ¶ 3.)

Blue Spike also fails to allege that LeMall has "a regular and established place of business" in this district. The contention that it "does business in the State of Texas," is insufficient for two reasons. **First**, it alleges only that LeMall does business somewhere within the state; it does not allege that any such business occurs in the Eastern District of Texas. The patent venue statute only allows venue in "the judicial **district**"—not the state—where the requisite business requirements are met. 28 U.S.C. 1400(b).

**Second**, Blue Spike alleges only that LeMall "does business" in Texas, but venue requires "a regular and established place of business" in the district, not just the carrying on of business. 28 U.S.C. 1400(b). Indeed, the Supreme Court specifically stated in *Fourco* that the patent venue statute demonstrated Congress's intention not to make corporations suable "where they are merely 'doing business.'" *Fourco*, 353 U.S. at 226.

At bottom, Blue Spike has attempted to allege venue under a now defunct standard. It has failed to make allegations consistent with *TC Heartland*, so even accepting Blue Spike's allegations as true, it has failed to alleged facts supporting venue under Section 1400(b).

### 3.  Venue is improper because LeMall does not reside in this district or have a regular and established place of business here

To the extent the Court believes Blue Spike has *alleged* facts supporting venue, it should nonetheless dismiss this case because such allegations are inconsistent with the facts. Venue is improper here because the Eastern District of Texas is not the judicial district where LeMall resides or where LeMall has a regular and established place of business. *See* 28 U.S.C. § 1400(b).

First, LeMall is a Delaware corporation (Deng Decl. ¶ 5), and therefore resides only in the District of Delaware. *TC Heartland*, 2017 WL 2216934 at *8.

Second, LeMall has no business—let alone a regular and established place of business— in this district. LeMall has no employees living or working in Texas. (Deng Decl. ¶ 15.) It has no

10

property (owned or rented) in Texas and its does not have an office here. (*Id.* ¶¶ 13, 16.) LeMall has no mailbox or telephone number in Texas. (*Id.* ¶ 17.) It lacks a bank account in Texas. (*Id.* ¶¶ 18–19.) LeMall is not registered with the Texas Secretary of State. (*Id.* ¶ 20.) LeMall does not make or use any products or services in Texas. (*Id.* ¶ 21.) In short, LeMall has no connection whatsoever with Texas, including the Eastern District of Texas.

Consequently, venue is improper in this district, so the Court should dismiss this case pursuant to Rule 12(b)(3).

### B.   The Court Should Dismiss Leshi For Lack Of Personal Jurisdiction

#### 1.   Legal principles

On a motion to dismiss for lack of personal jurisdiction, the plaintiff must make a prima facie showing that personal jurisdiction is proper. Fed. R. Civ. P. 12(b)(2); *Grober v. Mako Prod., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012). The court accepts the plaintiff's uncontroverted allegations and resolves conflicts between the facts contained in the parties' submissions in plaintiff's favor. *Id.*

In a patent case, personal jurisdiction intimately relates to patent law, and Federal Circuit law governs the issue. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). A court can exercise personal jurisdiction over an out-of-state defendant if the forum state's long-arm statute permits jurisdiction without violating federal due process. *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000). The Texas long-arm statute reaches as far as the federal constitutional requirements of due process will allow, so the analysis of Texas's long-arm statute collapses into the federal due-process inquiry. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016); *Acceleron, LLC v. Egenera, Inc.*, 634 F. Supp. 2d 758, 769 (E.D. Tex. 2009).

The Due Process Clause of the Fourteenth Amendment "constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). It forbids personal jurisdiction over a nonresident defendant unless the defendant "purposefully availed" itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014).

General jurisdiction permits a court to assert jurisdiction over a defendant in any lawsuit in which the court has subject matter jurisdiction. *See id.* It may only be exercised over a corporation whose "affiliations with the State are so continuous and systematic as to render it essentially ***at home*** in the forum State." *Id.*[2]

Specific jurisdiction depends on an affiliation between the forum and the underlying controversy. *Id.* A state may assert specific jurisdiction over a nonresident defendant if the defendant's suit-related conduct creates "a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121. The defendant's contacts must be with the forum state itself, not merely with persons who reside there. *Id.* at 1122. When analyzing specific personal jurisdiction over a nonresident defendant, a court considers whether: "(1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair." *Grober*, 686 F.3d at 1346.

---

[2] All emphasis added unless otherwise noted.

### 2.   This Court lacks general personal jurisdiction over Leshi

Leshi is not "essentially at home" in Texas, so it is beyond the reach of this court's general jurisdiction. In particular, Leshi is organized under Chinese law and is headquartered in Beijing. It has no connection to Texas.

"It is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton,* 768 F.3d at 432. This truth emerges from the Supreme Court's personal jurisdiction jurisprudence, as recently clarified in *Daimler* and *Goodyear*. *See Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 698 (7th Cir. 2015) ("In recent years, the Supreme Court has clarified and, it is fair to say, raised the bar for [general] jurisdiction."); *accord Monkton*, 768 F.3d at 432. *See also Daimler AG v. Bauman*, 134 S. Ct. 746, 760–63 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

General jurisdiction reaches a corporation when "that corporation's affiliations with the State are *so continuous and systematic* as to render it <u>*essentially at home* in the forum State</u>." *Daimler*, 134 S. Ct. at 761 (quoting *Goodyear*, 564 U.S. at 919) (internal quotation marks and brackets omitted). To date, the Court identified two places satisfying this condition: the state of the corporation's principal place of business and the state of its incorporation. *Monkton*, 768 F.3d at 432; *see also Kipp*, 783 F.3d at 698. Any additional candidates must "meet the stringent criteria laid out in *Goodyear* and *Daimler*." *Kipp*, 783 F.3d at 698; *accord Monkton*, 768 F.3d at 432.

Leshi's incorporation is in China (Wei Decl. ¶ 2.) It is not now, and never was, incorporated in Texas. (*Id*.) Likewise for Leshi's principal place of business:  Leshi is headquartered in Beijing. (*Id.* ¶ 3.) Leshi is not headquartered in Texas, and it has no offices in Texas. (*Id.* ¶ 12.) Thus, Leshi is unquestionably "at home" in China, not Texas.

Blue Spike effectively concedes that this Court lacks general jurisdiction, as the allegation aimed at it claims that it is "a conglomerate of companies *organized and existing under the laws*

*of **China***, with a ***principal place of business*** at Letv Building, No. 105, Yaojiyuan Road Chaoyang

District, Beijing 100026, ***China***." (Complaint ¶ 4.)

### 3.   This Court lacks specific personal jurisdiction over Leshi

Blue Spike fares no better on specific jurisdiction. It alleges that Leshi is subject to personal

jurisdiction because Leshi supposedly conducted various acts of patent infringement in Texas and

this district. (Complaint ¶ 2.) This is false.

Specific jurisdiction "depends on an affiliation between the forum and the underlying

controversy, principally, activity or an occurrence that takes place in the forum State and is

therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (internal quotation marks

and brackets omitted). Specific jurisdiction exists when the defendant "purposely directed its

activities" at the forum state, the plaintiff's claim "arises from or relates to those activities," and

the assertion of personal jurisdiction "is reasonable and fair." *Radio Sys. Corp. v. Accession, Inc.*,

638 F.3d 785, 789 (Fed. Cir. 2011).

Applying these principles to this case makes it immediately apparent that the case has

nothing to do with Texas or this district whatsoever. Leshi does not sell the Accused Products in

Texas, or anywhere in the United States. (Wei Decl. ¶ 8.) Indeed, Leshi has no connection at all

with Texas: it has no employees in Texas, makes nothing in Texas, imports nothing into Texas,

advertises nothing in Texas, has no offices in Texas, has no mailbox or telephone number in Texas,

lacks a bank account in Texas, does not file taxes in Texas, and is not registered with the Texas

Secretary of State. (*Id.* ¶ 11–19.) The idea that it committed any act within Texas or directed to

Texas—let alone an act of patent infringement—is unsupportable.

Blue Spike alleges the Leshi operates a website selling Accused Products accessible in

Texas (citing Complaint Exs. A–B) and partners with resellers and distributers to sell and offer for

sale Accused Products in Texas (citing Complaint Exs. C–D). (Complaint ¶ 8.) The evidence Blue

14

Spike cites shows no such thing. In particular, even assuming the alleged acts would be sufficient to establish personal jurisdiction, Leshi is not the party responsible for the alleged activity. The www.lemall.com/us/ website shown on Complaint Exs. A–B is not owned or operated Leshi, but by LeMall. (Deng Decl. ¶ 10.) Likewise, all U.S. sales and distribution activity is conducted by LeTech. (*Id*. ¶8.) Leshi is not responsible for any U.S. activity related to the Accused Products; instead, that is the responsibility of LeTech. (*Id*. ¶ 8; Wei Decl. ¶¶ 8–10.)

Leshi does not own any U.S. company, including LeTech or LeMall. (Wei Decl. ¶ 9; Deng Decl. ¶¶ 6–7.) Leshi does not direct or control the day-to-day operations of any U.S. company, including LeTech or LeMall. (Wei Decl. ¶ 10.) Although Leshi has an equity stake in Chinese companies that develop LeEco-branded televisions and smart phones—Leshi Zhixin Electronic Technology Co., Ltd. ("Zhixin") and Lemobile Information Technology (Beijing) Co., Ltd. ("Lemobile")—and those products are sold in the United States by LeMall and non-party LeTech (Wei Decl. ¶¶ 6–7; Deng Decl. ¶¶ 8–9), it is implausible that Leshi's equity stake in Zhixin and Lemobile could somehow be deemed a "purposeful direction" toward Texas and this district.

Consequently, Leshi must be dismissed for lack of personal jurisdiction.

## C.   The Court Should Transfer This Case To The Northern District of California

### 1.   Legal principles

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A threshold inquiry is whether the suit "might have been brought" in the proposed transferee venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) (Volkswagen II). Once a defendant satisfies that burden, the Court weighs certain factors to determine if transfer is warranted. *Volkswagen II*, 545 F.3d at 314 n. 9. The moving party must show good cause by demonstrating the transferee venue is clearly more convenient. *Id.* at 314.

When deciding whether to transfer an action, the Court balances the private interests of the litigants and the public's interest in the fair and efficient administration of justice. *Id.* at 315; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). The relevant factors are divided between these private and public interests. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). "The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315 (quotation omitted). "The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* (quotation omitted). These factors are not exhaustive, and no single factor is dispositive. *Id.*

### 2. The Northern District of California is a more appropriate forum

If the Court does not dismiss this case for the reasons articulated in Sections VI.A and VI.B, then this Court should transfer the case to the Northern District of California, a district where the case "might have been brought." 28 U.S.C. § 1404(a). That district would have personal jurisdiction over LeMall and venue would be appropriate there because LeMall has a regular and established office in San Jose and the accused act of LeMall selling Accused Products through the lemall.com/us/ website (Complaint ¶ 8) took place there. (Deng Decl. ¶¶ 13, 10–11.)

Regarding Leshi, as a foreign entity, venue is proper in any judicial district. *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 714 (1972). Moreover, if the Court concludes that Leshi is subject to personal jurisdiction in Texas—and, thus, rejects Leshi's Rule 12(b)(2) argument—the Court necessarily will have concluded that Leshi is subject to personal jurisdiction

in N.D. California, as Leshi's connections are substantially greater to the Northern District of California than to the Eastern District of Texas. (Wei Decl. ¶¶ 5–6; Deng Decl. ¶¶ 3, 11, 13–14.)

The private interest factors weigh heavily in favor of a transfer. Employees responsible for the accused U.S. conduct sit in San Jose, California, which sits within the Northern District of California. (Deng Decl. ¶ 11.) Likewise, documentary evidence concerning their activity is in San Jose. (*Id*. ¶ 11, 13–14.) The documents and witnesses would be relevant to at least the sales and marketing of the Accused Products. (*Id*. ¶¶ 8–9.) Similarly, to the extent other employees or documents outside San Jose are relevant, they are either in Los Angeles, San Diego, or Seattle, as those are the locations of LeTech's other offices. (*Id*. ¶ 14.) On the contrary, no LeMall or Leshi witnesses or documents exist in or near Texas. (*Id*. ¶¶ 13–21.)

Similarly, the Northern District of California is not foreign to Blue Spike. It has been a plaintiff there in six recent patent cases and, thus, has shown its willingness to consent to that court's personal jurisdiction.[3] Furthermore, Blue Spike's complaint alleges that the infringing conduct concerns the use of Google's Android operating system and the streaming of video services from Netflix. (Complaint ¶¶ 19–20.) Consequently, Google and Netflix appear to be potential third-party recipients of discovery, and both companies are headquartered in the Northern District of California. Netflix is in Los Gatos, CA, and Google is in Mountain View, California. (Stahl Decl. ¶¶ 14-15; Exs. D-E.) As noted previously, LeMall pays non-party LeTech for personnel to manage its online stores, so LeTech is another relevant third party. (Deng Decl. ¶ 11.)

---

[3] *Blue Spike, LLC v. Facebook, Inc.*, No. 4:15-cv-04185 (N.D. Cal.); *Blue Spike, LLC v. Gracenote Inc et al.*, 4-15-cv-01494 (N.D. Cal.); *Blue Spike, LLC v. Zeitera, LLC et al.*, No. 4:14-cv-01648 (N.D. Cal.); *Blue Spike, LLC v. Adobe Systems, Inc.*, No. 4-14-cv-01647 (N.D. Cal.); *Blue Spike, LLC v. SoundHound, Inc.*, No. 4:14-cv-01649 (N.D. Cal.); *Blue Spike, LLC v. Google Inc.*, No. 4:14-cv-01650 (N.D. Cal.).

LeTech is in San Jose (*Id*. ¶ 14), and thus is within the Northern District of California. Defendants are not aware of any potentially relevant third parties in Texas.

Thus, relative to this district, the Northern District of California has superior access to sources of proof, availability of compulsory process to secure the attendance of witnesses, and cost of attendance for willing witnesses. *See* Fed. R. Civ. P. 45 (b)(2)(A)-(C).

Regarding the public interest factors, "the administrative difficulties flowing from court congestion" is neutral, as both this district and the Northern District of California have similar average times to trial (Stahl Decl. ¶ 18; Exs. F-G (Docket Navigator reports)). *See Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 877 (E.D. Tex. 2013). As for "the local interest in having localized interests decided at home," there is none in any particular district because this case does not present allegations suggesting the accused conduct is concentrated anywhere in particular; instead the sales and marketing of the Accused Products supposedly occurs through Defendants' alleged sales website and the website of Amazon.com (Complaint ¶ 8). *See Frito–Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 872 (E.D. Tex. 2012). "The familiarity of the forum with the law that will govern the case" is neutral because "both the Northern District of California and the Eastern District of Texas are equally capable of applying the law regarding patent infringement." *Adaptix*, 937 F. Supp. 2d at 878. Finally, this case presents no "conflict of laws or in the application of foreign law" because it is not governed by any state law or foreign law, but instead by federal patent law. (*See* Complaint ¶¶ 1, 26, 37, 48, 56, 64, 72, 80.)

Consequently, each of the relevant private and public factors favors transfer to the Northern District of California, so this Court should transfer this case there under 28 U.S.C. § 1404(a) to the extent this Court does not dismiss it.

## VII. THE COURT SHOULD DISMISS CLAIMS FOR FAILURE TO STATE A CLAIM

To the extent the Court declines to dismiss or transfer this case for the reasons articulated above, the Court should dismiss claims that fail to state a claim upon which relief can be granted. Taking the allegations as true—as this court must on a Rule 12(b)(6) motion—Defendants sell smart phones and televisions. On essentially that basis alone, Blue Spike seeks to open the door to a torrent of discovery on nineteen such products allegedly sold by Defendants. (Complaint ¶ 17 (listing, without limitation, the Accused Products)). This Court should not permit Blue Spike to impose such a significant burden on Defendants in the absence of a complaint that meets the standards of *Twombly* and *Iqbal*.

Blue Spike's Complaint falls woefully short. In particular, the Complaint is replete with formulaic recitations of the elements of contributory, induced, and willful infringement without facts showing that Blue Spike is entitled to relief. Most glaringly, Blue Spike ignores the significance of a patent being expired more than a year prior to this action and attempts to implicate Defendants based on circumstances having no connection to Defendants whatsoever. This Court must therefore grant Defendants' Motion to Dismiss.

### A.   Legal Principles

Federal Rule of Civil Procedure 8(a)(2) requires that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Federal Rule of Civil Procedure 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

19

In addition, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. A complaint demonstrates plausibility only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Thus, a complaint that alleges facts merely consistent with liability "stops short of the line between possibility and plausibility" and should be dismissed. *Twombly*, 550 U.S. at 546.

### B. All Of Plaintiff's Claims For Indirect And Willful Infringement Should Be Dismissed Because Plaintiff Inadequately Pled Knowledge Of The Patents

Plaintiff's claims for indirect and willful infringement should be dismissed because they are based solely on post-suit conduct or unsupported, conclusory allegations of pre-suit conduct.

#### 1. Post-suit conduct cannot form the basis of indirect and willful infringement claims in an original complaint

In *Bush Seismic Tech. LLC v. American Gem Society*, this Court dismissed claims of indirect and willful infringement in an original complaint that were grounded exclusively in the plaintiff's post-filing conduct. No. 2:15-cv-1809-JRG, Dkt. No. 44 at * 5 (E.D. Tex. April 13, 2016). The Court explained that "[a] patentee should not prospectively allege post-filing conduct in an original complaint" because a patentee "could not have had a good faith basis" to plead claims based on "post-suit conduct that had not yet occurred." *Id.*

The allegations in Blue Spike's Complaint are nearly identical to the insufficient allegations in *Bush Seismic*. In *Bush Seismic*, the plaintiff alleged that the defendant "has and continues to directly infringe one or more claims of the [patent at issue]," that the defendant's infringement is willful based on allegations that the defendant "had knowledge of the [patent at

issue] at least as early as the filing of the Complaint," and "indirectly infringed the [patent at issue] by inducing customers and partners to infringe." *Id.* at * 2. Mirroring those allegations, Blue Spike alleges that "Defendant has been and now is directly infringing" (Complaint ¶¶ 27, 38, 49, 57, 65, 73, 81), "Defendant had knowledge of the [] Patent at least as early as the service of this complaint" (*Id.* ¶¶ 31, 42, 51, 59, 67, 75, 83), and "Defendant induces and contributes to the infringement of its customers, who use the infringing functionality, and its partners and resellers" (*Id.* ¶¶ 30, 41, 51, 59, 67, 75, 83). Thus, for the same reasons set forth in *Bush Seismic*, Blue Spike's allegations of post-suit knowledge of the patents at issue are insufficient to support its claims of indirect and willful infringement.

### 2. Blue Spike's pre-suit allegations based solely upon information and belief should be disregarded because they lack factual support

The Court should disregard Blue Spike's allegations of pre-suit knowledge based solely on information and belief because they lack factual support. "Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard." *Legendary Lightning Grp., Inc. v. Optigenex, Inc.*, 4:15-CV-53-LG-CMC, 2015 WL 3942946 (E.D. Tex. June 26, 2015).

### a) The '569 Patent

Blue Spike does not affirmatively allege that Defendants knew of the '569 Patent prior to this action. Instead, Blue Spike alleges that "[t]he '569 patent has been forward-cited as prior art in connection with the examination of at least 300 subsequently issued U.S. Patents." (Complaint ¶ 33). However, those allegations have nothing to do with Defendants. The Complaint does not allege that those "at least 300 subsequently issued U.S. Patents" were prosecuted or owned by Defendants. Nor does the Complaint include any allegations that Defendants were involved in any

activities that would bring those patents to Defendants' attention. As a result, the allegations related to the '569 Patent being forward-cited wholly lack any factual connection between Defendants and the '569 Patent and, thus, do not give rise to a reasonable inference that Defendants had knowledge of the '569 Patent prior to service of the complaint.

Further, the knowledge requirement for indirect infringement requires more than merely knowledge of the patent. Indirect infringement requires not only knowledge of the patent in suit but knowledge of patent infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015). Here, Blue Spike's allegations are insufficient to sustain a claim for indirect infringement. That the '569 Patent may be prior art to some unrelated patents does not give rise to a reasonable inference that Defendants had pre-suit knowledge of *infringement*.

Blue Spike also alleges solely upon information and belief that Defendants had knowledge of the '569 Patent "in the course of its due diligence and freedom to operate analyses." (Complaint ¶ 33). Blue Spike fails to plead any facts to support the existence of a due diligence or freedom to operate analysis. Further, even if Defendants conducted a due diligence and freedom to operate analyses, the Complaint fails to explain how the '569 Patent was somehow uncovered and analyzed in those analyses prior to service of the complaint. Thus, those allegations based solely upon information and belief are not sufficient to unlock the doors to discovery.

### b) The '719 Patent

With respect to the '719 Patent, Blue Spike alleges upon information and belief that Defendants had knowledge of the patent through Blue Spike's lawsuits against *third parties* publicized in a single online article by the *South China Morning Post*. (Complaint ¶ 44; Ex. L). The online article does not mention the '719 Patent. (*See id.* at Ex. L).

Those allegation are insufficient to adequately plead knowledge of the '719 Patent under willful or indirect infringement theories. Blue Spike does not allege any facts giving rise to a

reasonable inference that Defendants had any involvement in Blue Spike's lawsuits against the third parties or that there was any reason why Defendants would have learned about the patent in light of the Article's failure to mention the Patent. Finally, Blue Spike pleads no facts explaining how or why Defendants would have become aware of the online article in the *South China Morning Post* in the first place.

With respect to indirect infringement, Plaintiff's allegations are particularly deficient. Even if Defendants were aware of the lawsuits via the article or otherwise, it would be implausible to infer that Defendants gained knowledge that its products infringed the '719 Patent when the lawsuits involved different products sold by third parties. *See Straight Path IP Grp., Inc. v. Apple Inc.*, No. C 16-03582 WHA, 2016 WL 8729942, at * 3 (N.D. Cal. Oct. 21, 2016) (dismissing a claim for indirect infringement because "[i]t is simply implausible to infer that Apple performed analysis and concluded that its products infringed the '469 patent based solely on the fact that Straight Path had asserted it against *others* in Apple's joint defense group but *not against Apple*").

Therefore, Blue Spike's allegations of knowledge of the '719 Patent based solely on information and belief are insufficient to support indirect and willful infringement claims based on pre-suit conduct.

### c)   The Remaining Patents of Counts 3-7

Blue Spike's allegations of pre-suit knowledge with respect to the '246 Patent, the '561, the '295 Patent, the '116 Patent, and the '011 Patent—again based solely up information and belief —are not sufficient to sustain claims of willful and indirect infringement because they are conclusory and wholly unsupported by factual content. Blue Spike, without more, alleges upon information and belief that Defendants had knowledge of the five patents "a. In the course of its due diligence and freedom to operate analysis; and b. Due diligence in relation to its prior litigation with Blue Spike." (Complaint ¶¶ 53, 61, 69, 77, 85). These types of conclusory statements are "not

entitled to be assumed true." *Iqbal*, 556 U.S. at 681 (disregarding bald assertions in the complaint). Blue Spike fails to plead any facts to support the existence of a due diligence or freedom to operate analysis. Further, even if Defendants conducted a due diligence and freedom to operate analyses, the Complaint fails to explain how each of the five patents were somehow uncovered and analyzed. In addition, Blue Spike fails to specify what "prior litigation with Blue Spike" occurred or if and how the five patents were in any way disclosed during that unspecified litigation. Thus, Blue Spike fails to plausibly plead that Defendants had pre-suit knowledge of the patents.

Accordingly, Blue Spike's claims for indirect and willful infringement of the '569 Patent must be dismissed.

## C.   Count I Should Be Dismissed For Failure To State A Claim For Direct, Indirect And Willful Infringement

### 1.   The Complaint fails to state a claim for direct infringement of U.S. Patent No. 5,745,569 by Defendants

The Complaint fails to state a claim for direct infringement of U.S. Patent No. 5,745,569. U.S. Patent No. 5,745,569 contains only method claims. ('569 Patent, Dkt. No. 1-15 at 5-6). Direct infringement of a method claim "occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc., v. Limelight Networks, Inc.,* 797 F.3d 1020 (Fed. Cir. 2015) (*en banc*). Thus, a claim for direct infringement of a method patent must be dismissed if the complaint fails to allege that the defendant performed all steps of the claimed method or that the performance of all steps of the claimed method are attributable to the defendant. *See Lyda v. CBS Corp.*, 838 F.3d 1331, 1340 (Fed. Cir. 2016) (dismissing complaint for failing to properly plead direct infringement of a method claim). "[W]here multiple actors are involved in practicing the claim steps, the patent owner must show that the acts of one party are attributable to the other such that a single entity is responsible for the infringement." *Id.* at 1338. "[A]n entity will be responsible for others' performance of method steps in two circumstances: (1) where that

entity directs or controls others' performance, and (2) where the actors form a joint enterprise." *Id.* at 1338-39.

There are no allegations in the Complaint that can form the basis of a reasonable inference that each step of a claim of the '569 patent was performed by or should be attributed to Defendants. The Complaint appears to rely on both a "typical" claim of direct infringement (in which a defendant performs each step of the claimed method) and a theory of joint infringement. (*See id.* ¶ 27). The entirety of allegations directed toward the "typical" claim of direct infringement is a single, conclusory clause: "Defendant has been and now is directly infringing by, among other things, practicing all steps of the '569 Patent." *Id.* That is exactly the type of formulaic recitation of the elements of a cause of action that are insufficient to state a claim for relief. *See Twombly*, 550 U.S. at 555.

Moreover, according to the allegations set forth in the complaint, only users of the Accused Products—not Defendants—could potentially practice all steps of the '569 Patent. The Accused Products are smartphones and televisions. (*Id.* ¶ 27; Exs. A, B). According to the Complaint, the Accused Products perform the claimed methods when they "utilize the Android operating system, which employs Address Space Layout Randomization." (*Id.* ¶ 29). Yet the Complaint does not allege facts that would allow the Court to draw a reasonable inference that the Defendants use the smartphones or TVs in a way that practices all the steps of the '569 Patent. On the contrary, the Complaint merely alleges that Defendants imports the phones and TVs in the United States, "offers for sale and sells the Accused Products via its own online store," "has partnered with numerous resellers," "generates revenue from sales," and has "demonstrated the Accused Products." (*Id.* ¶ 27). Blue Spike has pled <u>no</u> factual content as to how Defendants practice all steps of the method claims of the '569 Patent and, thus, has failed to state a claim of "typical" direct infringement.

The Complaint also fails to state a claim for direct infringement under a theory of joint infringement. The Complaint's sole allegation supporting its joint infringement theory is insufficient to unlock the doors to discovery: "Defendant has been and now is directly infringing by, among other things, . . . directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '569 Patent." (*Id.* ¶ 27).

Blue Spike's allegations are far more conclusory than those in *Lydia*, which the Federal Circuit found insufficient under the *Iqbal/Twombly* pleading standard. 838 F.3d at 1340. In *Lydia*, the plaintiff alleged that the infringing use of cell phones by end users was attributable to defendants. *Id.* at 1339. However, the Federal Circuit found that plaintiff's failure to allege any facts showing how the defendant controlled the users of the cell phones or had any relationship with the cell phone users that would cause their actions to be attributable to the defendant warranted dismissal of the claim. *Id.* at 1340. Similarly, Blue Spike has failed to plead any factual allegations showing how defendants controlled actions of "its partners, distributors, and retailers" or end users or entered into a relationship such that Defendants are responsible for the performance of the method steps. (*See id.* ¶ 27). Therefore, this Court must dismiss Blue Spike's claim for direct infringement of the '569 Patent.

### 2. The Complaint fails to state a claim for indirect or willful infringement of expired U.S. Patent No. 5,745,569

Blue Spike's claims for indirect and willful infringement should be dismissed because Defendant has not sufficiently alleged knowledge of the '569 Patent by defendants *before* the expiration date of the '569 Patent. Indirect infringement – under both induced and contributory infringement theories – "requires knowledge of the patent in suit and knowledge of patent infringement." *Commil*, 135 S. Ct. at 1926. Likewise, culpability in the context of willful infringement is "generally measured against the knowledge of the actor at the time of the

challenged conduct." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016). Thus, allegations sufficient to allow a court to reasonably infer that a defendant knew of the patent during its 20 year term is a prerequisite to adequately pleading indirect and willful infringement.

Blue Spike's claims for indirect and willful infringement of the '569 Patent must be dismissed because the Complaint fails to sufficiently allege that Defendants had knowledge of the '569 Patent before its expiration date. The '569 Patent expired on January 17, 2016, more than one year prior to service of the Complaint. Thus, in order to state a claim for indirect or willful infringement, the Complaint must contain allegations that Defendants knew of the '569 Patent before January 17, 2016. *See Commil*, 135 S. Ct. at 1926; *Halo*, 136 S. Ct. at 1933. The complaint is void of any such factual content. Accordingly, Blue Spike's claims for indirect and willful infringement of the '569 Patent must be dismissed because the Complaint fails to sufficiently allege that Defendants had knowledge of the '569 Patent before its expiration date.

### D.  Counts 3-7 Fail To State A Claim For Contributory Infringement

Counts 3-7 of the Complaint fail to adequately plead contributory infringement. Blue Spike alleges in Counts 3-7 that the Accused Products[4] "have no substantial non-infringing uses," and that the Accused Products infringe when they are used to allow playback via "Netflix or other streaming services." (Complaint ¶¶ 50, 58, 66, 74, 82). However, the Complaint, on its face, supplies facts that show the Accused Products have substantial non-infringing uses that defeat Plaintiff's claims for contributory infringement, such as making calls and displaying television.

"Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to practicing

---

[4] The Complaint does not allege that a particular component of the Accused Products has no substantial non-infringing uses. On the contrary, the Complaint alleges that each Accused Products, as a whole, lacks any substantial non-infringing uses. (*See* Complaint ¶¶ 50, 58, 66, 74, 82).

the invention, has no substantial non-infringing uses, and is known by the party 'to be especially made or especially adapted for use in an infringement of such patent.'" *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012) (quoting 35 U.S.C. § 271(c) ). "To state a claim for contributory infringement, therefore, a plaintiff must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringement uses." *Id.* "[A] substantial non-infringing use is any use that is not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Id.* "For purposes of contributory infringement, the inquiry focuses on whether the Accused Products can be used for purposes *other than* infringement." *Id.* at 1338 (emphasis in original).

The claims of contributory infringement in Counts 3-7 are defeated by affirmative allegations in the Complaint itself that show that the Accused Products have substantial non-infringing uses. *See id.* (explaining that a claim for contributory infringement is defeated when the complaint's "own allegations make clear that [the Accused Products] can be used for multiple [non-infringing] purposes"). The Accused Products are smartphones and televisions and, thus, have substantial non-infringing uses such as making phone calls and displaying television, respectively. (*See* Complaint and Exhibits, Complaint ¶ 17; 1-2; 1-3; 1-4). Further, the complaint attached documents detailing additional non-infringing uses of the accused smartphones such as capturing pictures and videos. (Dkt. No. 1-2 at 4 of 6 ("Ultra HD Still Photo and Video Capture"). Thus, because the Complaint itself shows that the Accused Products can be used in ways that do not infringe, this Court must dismiss the contributory infringement claims of Counts 3-7.

### E.   Counts 3-7 Fail To State A Claim For Induced Infringement

Counts 3-7 of Blue Spike's Complaint fail to state a claim for induced infringement because Blue Spike fails to allege any facts that can establish a plausible inference that Defendants had the specific intent to induce infringement. "Whoever actively induces infringement of a patent

shall be liable as an infringer." 35 U.S.C. § 271 (b). To state a claim for induced infringement, a patent holder must plead facts establishing a plausible inference "that once the defendants knew of the patent, they "actively and *knowingly* aided and abetted another's direct infringement."  *See DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (*en banc* in relevant part) (emphasis in original). "Accordingly, inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *Id.* at 1306.

According to the complaint, direct infringement occurs when end users use the Accused Products in a way that allows playback via "Netflix or other streaming services." (Complaint ¶¶ 50, 58, 66, 74, 82). Thus, to adequately plead a claim of induced infringement, the Complaint must plead facts establishing a reasonable inference that Defendants engaged in culpable conduct that encouraged the end users to use the accused smartphones and TVs in such a way as to allow playback via "Netflix or other streaming services."

The complaint contains no such factual allegations. On the contrary, Blue Spike summarily alleges Defendants provide to others "products for use in systems that fall within the scope of one or more claims of the [patents]." (Complaint ¶¶ 51, 59, 67, 75, 83). However, this Court has repeatedly held that significantly more is needed to state a claim for induced infringement under *Twombly* than merely providing a product that can be used to infringe. *See Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427, at * 4 (E.D. Tex. Aug. 14, 2015) (dismissing a claim for induced infringement because "generic allegations" that a defendant provided a direct infringer with the Accused Products and instructional materials, without more, "are insufficient to create a reasonable inference of specific intent for purposes of an induced infringement claim."); *U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*, No. 6:12-CV-366-

MHS-JDL, 2013 WL 8482270, at * 4 (E.D. Tex. March 6, 2013) (holding that allegations that defendant "'supplies' infringing systems and components and provides 'instructions' to its customers who allegedly infringe do not create a reasonable inference of inducement"). Accordingly, Blue Spike's claims for induced infringement in Counts 3-7 must be dismissed.

## VIII.   CONCLUSION

For the reasons set forth above, LeMall and Leshi respectfully ask this Court to GRANT their motion to dismiss. To the extent it declines to do so, LeMall and Leshi respectfully ask this Court to GRANT their motion to transfer this case to the Northern District of California.

Dated:  June 12, 2017

Respectfully submitted,

*/s/ Christian G. Stahl*
Christopher J. Fahy, IL ARDC No. 6286130
Christian G. Stahl, IL ARDC No. 6290825
Louis A. Klapp, IL ARDC No. 6303722
Michael H. Fleck, IL ARDC No. 6305929
Hao Tan, IL ARDC No. 6314119
QUARLES & BRADY LLP
300 N. LaSalle Street, Suite 4000
Chicago, IL 60654-3422
Ph:  (312) 715-5000
christopher.fahy@quarles.com
christian.stahl@quarles.com
louis.klapp@quarles.com
michael.fleck@quarles.com
hao.tan@quarles.com

Deron R. Dacus
Texas Bar No. 00790553
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Ph:  (903) 705-1177
ddacus@dacusfirm.com

*Counsel for LeMall Corp. and Leshi Internet Information and Technology Corp.*

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that on June, 12, 2017, I caused a copy of the foregoing to be filed with the Clerk of Court via the CM/ECF system, which sent a Notice of Electronic Filing to all counsel of record.

*/s/ Christian G. Stahl*